for rebuttal. We'll hear your opening. Yes. Thank you, Your Honor. May it please the court. Stephen Farina from Williams & Connolly on behalf of Appellant Daniel Belcher. I apologize to the court for the technical issues. This case involves an important question of statutory interpretation. Under the Sarbanes-Oxley Act, all documents or information prepared or received by or for the PCOB in connection with a PCOB investigation are to be treated as confidential and privileged. This statutory privilege is a cornerstone of the regulatory framework established by the Act, as I believe the legislative history which we cite in our papers makes clear. The purpose of the privilege is to promote the transparent flow of information between accountants and accounting firms and the PCOB during the course of an investigation. Many investigations ultimately are closed without any action being taken and the investigations themselves are by law privileged and confidential. They're not publicly disclosed. All of these materials that are generated in the course of an investigation, including testimony, are covered by the privilege. The privilege has been enforced by numerous federal courts since its enactment, including in cases involving the FDIC. In our opening brief, we cite the Colonial Bank Group case, which like here is another case involving the FDIC as receiver bringing common law claims against an accounting firm for damages. It's not a regulatory action. It's a it's a civil lawsuit for damages. Mr. Farina, I have a question about maybe and maybe related to some of these other cases. I haven't seen a procedurally similar case. I mean, in that the FDIC filed this particular lawsuit to enforce a subpoena for Mr. Belcher. And so the district court here had jurisdiction obviously to decide if the deposition should proceed and wrapped up in that would be maybe it wants to limit the deposition. Oh, you shouldn't get into these documents because I have concerns about how they were turned over. But what gives this district court authority to, you know, require if it if we were to agree with you on the merits, turning the documents back over? I mean, why wouldn't that be an issue? My understanding is now there's an accounting malpractice accounting case that the receivers brought against Ernst and Young. Why in this limited force a subpoena? Would there be jurisdiction to say give these So, Mr. Belcher and you, I filed multiple motions. There was a motion to quash the subpoena. And it's well settled under established law that protection of privilege is a basis upon which one could quash a subpoena, including the intrusion of privilege in the deposition itself. But Mr. Belcher also filed a motion to disqualify citing the statutory. So on the quashing of the subpoena, so sure, the court could say, I'm not going to allow this deposition and go forward. I'm going to limit it. I'm not going to let you get into these documents. But do you think just a motion to quash the subpoena would also empower this judge to say, give the documents back? Well, I think the way it would have worked and the way we envisioned it working is that the relief that we were seeking was that the deposition go forward with counsel who was not tainted, having received the confidential and privileged information. None of the witnesses, including Mr. Belcher, objected to the idea of giving testimony to the FDIC. It was simply not testimony taken by someone who had intruded into the privilege, hence the motion for disqualification. So the court, well, could have fashioned. So if we agree with you, let's say we agree with you. And maybe there's a remedy of this whole deposition has to be wiped away and counsel has to be disqualified because they were tainted, all that. What's the, my understanding is you want this, the district court in this matter to say, give these documents back. Well, I think that's actually among the relief that that the FDIC itself contemplates in its briefing. Clearly, well, the district court did not address the issue of remedies because the court found there was no statutory violation. We have asked in our appeal papers that the matter be remanded to the district court so the district court could fashion an appropriate remedy. The FDIC acknowledges in its papers that that some remedy would be available for a violation. They just dispute the appropriate remedy. There's a new wrinkle to all this in that the FDIC as receiver has now filed the bank's claims. That's before Judge Fallon. We may also, I think it would be appropriate for us to seek relief from Judge Fallon as well. Well, that's sort of my point is that if there's another lawsuit, it seems like that's, I mean, in that other lawsuit, couldn't the FDIC just subpoena these documents from Ernst & Young? And, you know, maybe there'd be privileges or not, but maybe they can just get them through normal civil discovery independently of having gotten them from the agency. Well, that is exactly not the case. And that is the root of the problem here. So the colonial bank case and the other cases like that are, as you said, in the more traditional context of you have a plaintiff bring in action. They try to get documents that are covered by the privilege. The defendant says, no, they're covered by the privilege and the privilege is enforced. So if the FDIC had gone that route and simply tried to subpoena Mr. Belcher's testimony in the civil case that they have now filed, the privilege would be applied and they would not get those documents. I don't think there's any question about that. The issue is whether by virtue of this exception and whether the exception applies, they were allowed to get these documents, same counsel for the same purpose, just they got it differently and therefore there's no statutory violation. We submit that because... What I mean, not that in the other case in front of Judge Fallon, couldn't they just ask for the documents directly from E&Y and that'd be not from the government agency? They could not ask for the documents that are covered by the statutory privilege. Under the account, okay. Correct. So for example, the best example of that, Your Honor, is the testimony. So we're not saying that they couldn't get our work papers. That's what I'm saying. You could, in the normal course of discovery, you're suing an accounting firm. You're going to say, produce your related papers. And it might be fought, every discovery battle, whether you're entitled to that. But just because you can't get them from the agency because they were turned over there doesn't mean through the normal course of civil discovery, they can't get the documents. Absolutely. And that's true for documents that are not specifically prepared for the PCOB. The transcripts are a very good example of information that there's no way as a private litigant in the case before Judge Fallon, they could get those. There's 28 days worth of pages. I don't think any litigator would question the value of having that. And it includes four days of deposition testimony from Mr. Belcher. There's another wrinkle to all this that is alluded to in our papers, that there are Louisiana statutory privileges for some of the materials that would protect disclosure in the civil action. The FDIC actually got those materials also from the PCOB. So those are two categories of information that would not be available in the civil action. But to be clear, to the extent the documents are available in the civil action, there's nothing wrong with the FDIC having them. There's nothing wrong with Schiff Hardin having them. It is the documents that are covered by the privilege that they're not supposed to have and that the privilege is intended to protect. That's where we take issue. And that is not an insubstantial volume of materials. And the possession of those materials by counsel violates our statutory right and there needs to be a remedy. Now, it would go back to the district judge, whether it's Judge Zaney or Judge Fallon or some combination of the two of fashioning the appropriate remedy. I think that is an issue that could be left to the district court. Here, though, Judge Zaney determined that there was no violation. We think that was predicated on a misreading of the statute. And that issue is before this court. I don't think there's any question that it's still a live issue. If that issue is decided in Mr. Belcher's favor that there was a violation, then I think it would be appropriate for the district court to make the appropriate remedy. There's clearly a dispute as to the appropriate remedy. And that would be addressed below. I don't think there's a record for this court to address that specific issue. But whether or not the court misread and misapplied the statute is clearly before this court. The statute does have an exception. The exception provides that documents that are confidential and privileged can be shared with the appropriate federal functional regulator with respect to an audit report for an institution subject to the error here by the district court was in finding that the FDIC was the appropriate federal functional regulator with respect to the entity for whom the audit report was prepared. The holding company is the client. It's the holding company's financial statements that were audited by EY. It's the holding company's controls that were the subject of an audit by EY. The holding company is regulated by the Federal Reserve. There is no dispute among the parties that the appropriate federal functional regulator for the holding company is the Federal Reserve. There is no dispute that the FDIC is not the appropriate federal functional regulator for the holding company. So then the question is, was the audit conducted for the holding company or for the bank, the subsidiary? All of the underlying facts are undisputed. EY was engaged by the audit committee of the holding company. That's in the record. Record excerpt page 41. EY was not engaged by the bank. The holding company and the bank, of course, are separate legal entities. EY was engaged to audit financial statements issued by the holding company and the internal controls of the holding company. EY was not engaged to audit the financial statements or internal controls of the bank. EY issued its audit reports addressed to the board of directors of the holding company. And the opinions are on the financial statements of the holding company and the internal controls of the holding company. And the opinion itself is included in the record. It's in the FDIC. That audit report references the holding company six times. There's not a single reference in the audit report to the bank. EY did not issue any audit report on the financial statements of the bank or on the financial statements internal controls. An audit report is specifically defined in Sarbanes-Oxley. And an audit is also specifically defined in Sarbanes-Oxley. And they both relate with respect to the issuer. And the issuer here is not the bank. The issuer here is the holding company. We do not dispute that the FDIC is a federal functional regulator. The question is whether they were the appropriate federal functional regulator with respect to EY's audits. We believe that's, again, a question of statutory interpretation. The court simply misread and misapplied the statute. Now, what the court said was two things. First, the audit report appears to have been used by the bank. So the audit report on the holding company's financial statements and the holding company's internal controls that was commissioned by the holding company and issued to the holding company was used by the bank for purposes of its own regulatory filings. And that was permitted under the regulations. But the statute does not speak to the use of an audit report. The statute speaks to whether the audit report was for a particular entity or institution. And there are any number of individuals or entities that may use audited financial statements. The audited financial statements for the holding company were published in the holding company's Form 10-K. There are investors. There are lenders. There are commercial counterparties. Any number of people may use an audit report. That doesn't make the audit report an audit report for those constituencies. And that reading by the court, which is not supported by the text of the statute, that's not what the statute says, would dramatically expand the scope of the exception, contrary to congressional intent and contrary to the plain language of the statute. Used by is not sufficient to satisfy the criteria laid out expressly in the statute for the application of the exception. The other thing that the district court relied upon, and the receiver on the appeal does the same, is the fact that the financial statements issued by the holding company were consolidated financial statements. So the consolidated financial statements of the holding company subsumes the information of its subsidiaries here at the bank. There's no question that that's true, but that does not make the holding company's financial statements the financial statements of the bank. The bank has its own financial statements. They're different than the financial statements of the holding company. EY did not issue an opinion on the bank's financial statements. It issued an opinion on the holding company's financial statements. That's evident from the face of the opinion. So those were the two bases upon which the district court determined that the exception applied. And we think in light of facts that are not in dispute here, none of the things that I've mentioned are in dispute. The question is whether or not those facts are sufficient to a literal reading of the statutory text does not permit the exception to apply here, and it does not permit the receiver pursuing common law claims on behalf of the bank to have these materials. Thank you. All right. Thank you, Mr. Farina. We have your opening. Mr. Stevens, we'll hear from you. Thank you, Your Honor. Duncan Stevens on behalf of the Federal Deposit Insurance Corporation as receiver for First NBC Bank. The district court correctly enforced the FDIC subpoena directed to Mr. Belcher because that subpoena complied with the framework set forth in Morton Salt. No exceptions to Morton Salt apply here. Nothing about the PCOB's decision to share information with the FDIC affected the enforceability of that subpoena. The district court also correctly denied Mr. Belcher's motion to disqualify the FDIC's counsel. Let me start with the issue of for. The ordinary meaning of for controls, and the ordinary meaning of for includes the sense pertaining to or relating to. So we might say an essay for English class, notes for an exam, an itinerary for a trip. And this audit report was plainly, it plainly pertained or related to this bank. Because contrary to Mr. Farina's assertion that the audit report didn't reference the bank, it did. It did in several places. On page 282 of the record, this court will see that the auditor itself said, the following subsidiary institutions of the company that are subject to part 363 are included in this assessment of compliance with these designated laws and regulations. First, NBC Bank. So the audit firm assessed the bank's compliance. It also assessed the bank's controls over financial reporting. The following subsidiary institutions of the company, etc., are included in this assessment of the effectiveness of internal control over financial reporting. First, NBC Bank. And the auditor went on to say that the audit was intended to allow the bank, to enable the bank to meet its reporting requirements. On page 285, management's assessment and our audit were conducted to meet the reporting requirements of section 112 of the Federal Deposit Insurance Corporation Improvement Act, FDICIA. That section 112 applies to banks and not to holding companies. So this audit report pertained or related to the bank. It specifically referenced the bank in many places. And there's simply no basis for finding that the audit report was not for the bank. Now, Mr. Farina argues that it was for the holding company. And it was. It was for both entities, which is no surprise given that it was an audit of consolidated financial statements of both entities. And it's routine, Your Honor. It is routine for banks to obtain, to submit for their audit reporting requirements, to submit the audits of consolidated financial statements of themselves and their holding companies. That happens all the time. And it is no surprise that the PCOB would accept, the PCOB would share information with the regulator for a bank that is covered by an audit, an audit of consolidated financial statements. It is a routine practice. It is anticipated right there in the statute, which anticipates that banks will do this. And a common sense reading of this statute leads to the conclusion that the audit report was for the bank as well as the holding company. And Mr. Belcher argues that the bank didn't engage the audit firm. Well, that's true, but it's irrelevant. Nothing in the statute assigns any significance to what entity engaged the audit firm. And that's not consistent with the ordinary meaning of for. For does not presuppose a contractual relationship. If parents said, well, let's pick up some pizza for the kids, no one would say, no, no, parents, you can't say that because the kids aren't paying for the pizza. And by the same terms, by the same token, there's no reason why the fact that the bank didn't engage the audit firm means that the audit report is not for the bank. So Mr. Belcher is trying to rewrite the statutes that it reads so that it reads audit report for paid for by, by an institution. That's not what it says, nor does the statute say audit report for only one institution at a time. The court should not rewrite the statute. Congress was clear that it intended that it intended materials to be shared with the federal functional regulators for the institutions that jurisdiction over the institutions that the audit report is for this audit report was for the bank. Now, Mr. Farina alludes to the definition of audit report in statute and the definition of audit report references publicly traded issuers, issuers of publicly traded securities. It says, and it's a report prepared following the audit of a publicly traded issuer, but the sharing provision is very different. It does not use the word issuer. He uses the word institution. And that's very, that's very significant here because Congress used the word issuer throughout the Sarbanes-Oxley act to reference the institutions that the PCOB has authority over. It used it over 200 times in Sarbanes-Oxley act and it used the word institution twice here and the accompanying provision referencing the, referencing the regulators that the PCOB can share information with twice. And the obvious intent is for the Congress is for the PCOB to be able to share information with other regulators, whether or not those regulators are regulators for publicly traded entities. There's no reason why Congress would only want the PCOB to be able to talk to regulators for publicly traded entities. Again, non-publicly traded entities, the subsidiaries of publicly traded holding companies obtain audits. They are subject to audit requirements. They submit consolidated, the audits of consolidated financial statements to comply with those audits. Why would Congress only want the PCOB to talk with the to share, to share information with the regulators for all the affected entities, including the FDIC? So the meaning of audit report does not, does not point away, away from the PCOB sharing here because the use of institution and the sharing provision points directly at, points directly at the regulators for non-publicly traded institutions that includes the FDIC. And as for the intent of the statute, counselor, Mr. Belcher argues that this statute was intended to create a litigation privilege. Well, that may be the case as to involuntary disclosure in litigation, but it doesn't speak that not nothing in the legislative history speaks to voluntary disclosure by the PCOB to regulators. So the fact that in some cases like the Bennett, the Sprint Nextel case, which Mr. Belcher cites, the privilege has been invoked to prevent the involuntary disclosure by, by the audit firm or the PCOB of privileged information does not speak at all to whether the PCOB can voluntarily share information with regulators. And again, it simply makes sense that the PCOB would be able to do so. There's no reason, no reason why the PCOB would not be able to share information with regulators simply because those regulators can litigate. And indeed, a court has expressly addressed this issue. The Goldstone Court expressly addressed the use of information shared by the PCOB with other regulators and has found those regulators can use the information in litigation. So the, so the, the wall that Mr. Belcher is trying to build between the PCOB sharing and litigation, it doesn't exist. It doesn't exist in the legislative history. It doesn't exist in the statute. It doesn't exist at all. Well, let me ask you this. This is one of those cases we get often where nobody argues that the language is ambiguous, but both sides say the language clearly augurs in their respective favor. So that's, we have here, both of you say that the clear language of the statute favors the position that you take. The, the notion is you're arguing that the FDIC is a functional federal regulator. The other side says that may be true, but it's not the functional federal regulator in this instance. So that's kind of what attraction is. So assuming arguendo that we become unpersuaded by the FDIC view that a functional federal gets the deal done and send this back to the district court and say you didn't read it, putting aside intent of the statute, just strictly on what the words say. And we say, nope. And we send it back. What is your take on the remedy and comment, if you will, on the other conversation that Judge Costa mentioned about this other lawsuit? In other words, I'm not asking you to would think that the functional regulator doesn't work and we send it back. So what, what is the remedy? Is this the toothpaste that's already out the tube that it can't get put back in? Is it just passing of the hands from the, the untainted to the tainted, if you get my point. So help us out with what the deal would be. Sure. Now, if, if, should this court find first that the PCOB improperly shared documents and that that sharing was, was, is relevant to the enforcement of the subpoena. And we've, we've assumed those issues away when we've talked in the brief about remedy. If those both are true, then we think the appropriate remedy is for the, the FDIC simply to return the, return Mr. Belcher's privilege documents. And we're talking specifically about Mr. Belcher because Ernst & Young is not here. Return Mr. Belcher's documents from the PCO to the PCOB and proceeds proceed from there on the issue of whether the deposition that the FDIC has already taken of Mr. Belcher is tainted. We think the district court should address that in the first instance, because we agree with the counselor, Mr. Belcher, that transcript is not before the court. The court doesn't have, it doesn't have a premise. It doesn't have the information to assess it, but we think the district court will find on remand that nothing about that deposition reflects, reflects the influence, reflects any kind of taint from documents that, that the FDIC obtained from the PCOB that were covered by Mr. Belcher's privilege. The FDIC didn't use any of those documents in the deposition. We don't believe there'll be any basis. And that's why you said you assumed away the question, you assume the question, whether the documents are related to this enforcement of this subpoena, which is all this case is. But the documents is not, as you just said, my understanding is they weren't used at the deposition. So, so why, why is this before us as opposed to Judge Fallon in the, the main action brought against ENY? Well, the reason it's here is that Mr. Belcher invoked the PCOB sharing as a basis for, for resisting enforcement of a subpoena. Now he has not argued, he has not argued before this court, or he did not argue in his opening brief before this court, how exactly it pertains to the framework for enforcing a subpoena, which is set forth in Morton Salt. And there are certain exceptions to Morton Salt involving abusive process. Setting aside that he didn't raise it in his opening brief, we think the only hook is the abusive process theory set forth in this court's decision in ESM and in Zeta. And what the, what the court said in ESM and in Zeta was that where the agency intentionally misleads someone, where they are in fact misled and the subpoena is the fruit of the misleading conduct, that is grounds for finding an abusive process. We don't think any, any of that is satisfied here. So when we talk about remedy, we're, we're, as you say, assuming that that's, that's found, but we don't think that's that, that those, that those requirements are met here. We don't think that the PCOB sharing of that information makes what the FTIC did an abusive process. So, so in that respect, I mean, I, I agree with what I think, where I think your, your honor is going. There is a disconnect between the argument about the PCOB sharing of information and the framework for enforcing a subpoena. Um, and we don't think Mr. Belcher has made the showing about the PCOB sharing that it makes the subpoena unenforceable. If I can return to judge Stewart's, uh, just Stewart's point about the, the regulator versus a regulator, what the statute says is that the PCOB can share information with the appropriate federal functional regulator and goes on to say with respect to an art report for an institution subject to the jurisdiction of such regulator. So they submit that the appropriate federal functional regulator has to be read together with subject to the jurisdiction of such regulator, um, institution subject to the jurisdiction of such regulator. And that, that leads back to the for issue. Um, so appropriate is really the meaning of whether there's an institution regulated by this regulator that this audit was that this audit is for. And in this case, as we've argued, this audit report was for the bank. And if it was for the bank, given that the FTC is its regulator, the FTC is the, is the appropriate federal functional regulator. So I, um, what if we think both sides make reasonable arguments about for, and the, you know, the meaning of the statute and conclude that it's therefore ambiguous, where does that leave us? Well, the Supreme Court's decision in Skidmore v. Swift counsels deference to an agency's experience and informed judgment, which here is the PCOB construing the statute that the PCOB is charged with construing. Um, and we think that Skidmore deference counsels in favor of deferring the PCOB's construction of this statute. Now, obviously the, the court Chevron, the Supreme Council's stronger deference than Skidmore. We don't believe that the court has to get into, into Chevron because Skidmore is sufficient, but should the court reach Chevron, this is not simply a litigating position. The PCOB wasn't litigating anything when it interpreted the statute this way. PCOB is charged with, with interpreting this statute. And we believe that that deference would be owed under the Chevron framework. Um, we think Skidmore is, is sufficient to adopt that, that, uh, this, the PCOB's interpretation, however, um, and we think the, uh, we think the text of the statute obviously favors our interpretation. Um, I was looking over my notes to see whether there are additional points. A few minor points, Your Honor. Mr. Belcher, Counselor Mr. Belcher referred to a large volume of documents. Um, and I want to, I want to make the record clear before this court. There was a large volume of, of Ernst and Young privileged documents that the PCOB shared with the FDIC. There was a much smaller volume of Belcher, Daniel Belcher privileged documents and Ernst and Young again is not before this court. So Mr. Belcher has no standing, no standing to seek remedies as to the large volume of Ernst and Young privileged documents. If Ernst and Young had wanted to participate in this appeal, they could have appealed from the denial of their intervention motion. They chose not to. The only documents before the court are Mr. Belcher's own documents, which is a small volume. And I've spoken, I think to every aspect of why we think these, this, this audit report is for the bank. Um, and we think that Mr. Belcher is seeking to rewrite the statute to replace the term institution with issuer to replace the term, the term for with paid for to introduce a limitation and audit report can only be for one institution at a time, which is nowhere reflected in the statute and to introduce a distinction between regulators and litigants that doesn't exist. Regulators litigate all the time. Nothing in the statute limits disclosure to regulators who don't litigate or weren't going to use the information in litigation. So none of that is supported by the text of the statute. We think we think that the court should find that because this audit report was for the bank within the meaning of the statute, PCOB properly share the information with the FDIC and the subpoenas is, is clearly enforceable because the FDIC, uh, because there was no wrongdoing. And I'll, I'll briefly say the FDIC's counsel committed no, no wrongdoing at all here, let alone wrongdoing requiring disqualification. Disqualification is a highly disfavored remedy. It's imposed in situations where counsel obtained privileged information that they knew or should have known should not be shared with them. That's not the case here. The FDIC received information whose disclosure was authorized by the PCOB's own board and general counsel. This is nothing like a disgruntled employee passing a meeting in a parking garage to pass documents to counsel, you know, the sort of scenario you get in disqualification cases. Nor is it true as counsel Mr. Belcher has contended in the brief that ignorance of the law is no excuse when it comes to ethics. Courts look to whether the ethics rules were clearly set down in law all the time when they, when they determine whether there was sanctionable conduct. Some cases where courts have said so include this case, this court's decision in a case called Walker v. City of Bogalusa. That's at 168 F3rd, 237. The 7th Circuit so held on a case called Weibrecht v. South Illinois. That's at 241 F3rd, 875. The 3rd Circuit in Eastern Sugar, 697 F2nd, 524. All of these cases look to whether the law is clear. The law that supposedly renders counsel's conduct unethical is clear. In this issue of first impression, that was obviously not clear. And the fact that the PCOB's own board, upheld by the district court here, found that the PCOB acted properly further counsels against the conclusion that there was any disqualifiable conduct here. So for these reasons, we ask that the court deny Mr. Belcher's motion to disqualify, affirm the denial of his motion to disqualify, and affirm the grant of the FDIC's motion to disqualify. Thank you, Mr. Stevens. Mr. Farina, we're back to you. You reserve four minutes for rebuttal. Thank you, Your Honor. Let me begin with deference. There is a single sentence, starting on page 35 of the FDIC's brief, suggesting that Chevron or Skidmore might apply here. There is no legal basis to apply Chevron deference. First of all, this is not an argument that was even raised by the FDIC below. Deference of any sort is inapplicable if the statute is unambiguous. As both sides have argued, the statute is unambiguous. I recognize that the panel's asked some questions about what if it isn't unambiguous, and I will turn to that momentarily. But in terms of Chevron deference, the Supreme Court in the Christensen versus Harris County case wrote, interpretations such as those in opinion letters, like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law, do not warrant Chevron-style deference. And there have been many, many cases applying that rule. This was not an interpretation that resulted from rulemaking or some regular practice. It was a in terms of Skidmore deference. Skidmore deference is a measure of deference proportionate to the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, all of those factors that give it the power to persuade. And that again is from the Christensen case. In short, as the Supreme Court has said, under Skidmore deference, the court gives whatever deference the decision warrants. Here you have a letter from counsel. The first letter, which was the cover letter, just providing the documents includes no interpretation at all. It simply provides the documents and says that they're privileged. The second letter that was received after we objected to the disclosure of our privileged and confidential information does not include any interpretation of the statute. It simply says, and this is in the record at page five of the record excerpt, that a federal functional regulator includes the FDIC. And we do not dispute that. The FDIC is a federal functional regulator. It is not the appropriate federal functional regulator. And there's actually nothing in that letter that supports that position. The PCOB has said it can decide whether to provide documents to another agency. That is true, but only if the statutory criteria have been met. They can't choose to ignore Sarbanes-Oxley. So there's nothing about what the PCOB has said or done other than the fact that it did what it did that would be entitled to any deference whatsoever, because they have not actually offered an interpretation of the statute. I do want to go back very briefly to the report of independent accountants. I think there may be some confusion about that. The report appears in the FDIC's record excerpts. It is, in fact, RE001, and that's page 2885 in the record. It is the report of independent accountants. It is addressed to the board of directors of First NBC Bank Holding Company. It says, we have examined First NBC Bank Holding Company's controls. It says that we express an opinion on First NBC Bank Holding Company's internal controls. There is a reference to fiduciary in the letter, but there's no reference to the bank. And again, the opinion that is expressed in this report, which was included by the FDIC, is an opinion on the controls and financial statements of the holding company, not of the bank. In terms of why are we here, and is there some protection afforded to the actions taken here by virtue of the fact that we challenged them in the context of an enforcement of a subpoena, the district court clearly believed that it had to address whether or not there was a statutory violation to determine, one, whether to enforce the subpoena, and two, whether to disqualify counsel. The district court proceeded to address... You're out of time, Mr. Farina. I'll give you one sentence to wrap up. Thank you. The district court did, in fact, address those issues. We believe they did so incorrectly. And for us to obtain relief, we need this court to address the district court's decision. Thank you very much. All right. Thank you both. Mr. Farina, where are you geographically situated? I am in Washington, D.C., as I believe my adversary may be as well, and we are in the middle of a tropical storm here, but it seems to have just passed. All right. Mr. Stevens, you're in the D.C. Beltway area? Yeah, I'm in our offices in Arlington, Virginia, and we are getting a lot of rain this morning, but we're also inside the Beltway and hoping the storm passes soon. All right. Well, hopefully it will. I saw this morning on the weather report that it was, you know, headed that way. Hopefully, maybe it'll only get rain, but that said, thank you for the briefing and argument in the case. An interesting case, to say the least, but we'll get it decided. In the meantime, stay safe and healthy from the storm and for other things out there in the atmosphere. Thank you. Thank you, Your Honor. All right.